In the Matter of the Application of JOHN O'MALLEY, Petitioner, for a Mandamus Order against WILLIAM D. ROBBINS, City Manager of the City of Niagara Falls, New York, Respondent.

Supreme Court, Niagara County, March 16, 1931.

*Hunt & Carrie [George E. Carrie* of counsel], for the petitioner.

*George W. Knox, Corporation Counsel,* and *Earl W. Brydges, Deputy Corporation Counsel,* for the respondent.

NOONAN, J. This is an application for a peremptory mandamus directing the respondent, William D. Robbins, as city manager of the city of Niagara Falls, to reinstate the petitioner, John O'Malley, to the position of engineer's helper in the bureau of water

in the department of public service of the city of Niagara Falls.

The motion is based on the petition of John O'Malley, the affidavit of George E. Carrie, charges preferred against O'Malley by Roy B. Suitor, superintendent of public service of the city of Niagara Falls, and the proceedings upon those charges which include O'Malley's answer thereto, and the testimony taken before the respondent upon a hearing which was granted to O'Malley with respect to the charges. The respondent has not filed any answer to the petition nor any affidavit nor any evidence controverting the matters set up on behalf of the petitioner. The facts stated in the moving papers are, therefore, for the purpose of this motion, to be taken as true and the question presented is whether, upon those facts, the petitioner is entitled to a peremptory order.

It appears from the moving papers that the position held by the petitioner was a position in the civil service; that he was appointed thereto from a civil service eligible list after having taken a competitive examination; that the petitioner's immediate superior was William E. Hallett, engineer, above whom were, in the order named, A. M. White, chief engineer; Bertram T. Dignan, plant superintendent, and Roy B. Suitor, superintendent of public service; that the petitioner worked on regular shifts, one of which ended on December 27, 1929, and that the next began on December 30, 1929; that while working on December 27, 1929, the petitioner was taken ill and requested his immediate superior, Hallett, to call up a physician and make an appointment for him, which Hallett did, making an appointment with the physician for the following day. The petitioner contends that Hallett saw and was aware of his condition and we may assume this to be true, but it does not follow therefrom that Hallett knew that petitioner would be unable to return to work on December thirtieth. The petitioner finished his shift on December twenty-seventh, although barely able to do so because of his physical condition. The next morning he consulted the physician, Dr. McBlain, who examined him and found that he was suffering from a rheumatic condition of his back and prescribed certain treatment, including rest, and told him to come back and see him later. The petitioner accordingly stayed away from his work on the 30th and 31st of December, 1929, and the 1st and 2d of January, 1930, before he took any steps to notify any of his superiors that he was prevented by illness from attending to his work. On the last-mentioned date, at petitioner's request, Dr. McBlain wrote to Superintendent Suitor informing the latter of O'Malley's illness. On that day also O'Malley telephoned Dignan, requesting time off on account of illness. Dignan informed petitioner that he

would have to take the matter up with Suitor as it was out of his hands. It appears that O'Malley was able to be up and around on December twenty-eighth, for on that day he went to the plant where he had been working, although it was not his shift, but it does not appear that he, at that time, informed any one that he would be unable to return to work the next day, nor did he ask for any time off on account of illness. At the time of these occurrences there was in force a rule of the department as follows: "Effective October 1st, all employees in the Bureau of Water, who are absent from duty must arrange with another employee to attend to their duties and must pay this employee for such services on the next pay day thereafter, except when the employee is absent with leave, such leave to be obtained from Mr. Dignan, Plant Supt."

It does not appear that the petitioner made any effort to comply with this rule. There is evidence that the rule was not strictly enforced when the illness was such as to prevent notice being given by the employee and leave obtained, but such a situation does not seem to have existed in the present case, for it distinctly appears that the petitioner was able to be about on December twenty-eighth and twenty-ninth; that he was absent from home December thirtieth, about four hours and there is no evidence that he was confined to the house or unable to report his illness on December thirty-first, or January first; in fact, the inferences are all to the contrary.

The rule above quoted is clearly a reasonable rule, for it is necessary in case of the absence of an employee that measures be taken to fill his place during such absence, otherwise the work of the department would soon be disorganized with serious results to persons depending upon the water supply of the city.

O'Malley was charged with neglect of duty in failing to report for work on December 30 and 31, 1929, and January 1, 1930, without notice to his superiors. O'Malley, not being a veteran or volunteer fireman, was not entitled as a matter of right to a hearing. He was, however, under section 22 of the Civil Service Law, subdivision 2 (amd. by Laws of 1924, chap. 612), entitled to have the reasons for his removal stated, a copy of any charge preferred against him and a reasonable time to answer the charges. These rights were granted to him and, in addition thereto, he was given a hearing and an opportunity to produce evidence in his own behalf before the city manager. He did not, however, show or attempt to show any excuse for failure to notify his superiors of his inability to report for work, nor any excuse for his failure to apply for leave of absence on account of illness prior to January second. Thereupon, the respondent on the 9th of Decem-

ber, 1930, made a decision to the effect that the petitioner was guilty of the charges preferred against him and ordering that he be dismissed from his position.

On these facts the petitioner claims that he is entitled to a peremptory mandamus order directing the respondent to reinstate him. He urges that by custom, compliance with the rule above quoted has been waived in cases of sickness. There is some evidence that compliance with it was not required in such cases, but this must be deemed to apply to those instances in which the sickness was of such a nature as to prevent compliance, which was not the fact in the present case. It clearly appears from the evidence that had O'Malley seen fit to do so, he could have notified his superiors of his condition and intention to lay off, but took no steps to do so until after he had been absent from duty for three days without explanation. It is also urged on behalf of the petitioner that the charges were in themselves trivial and if sustained would not warrant the severe penalty of dismissal. I am unable to agree with this view. The charges are, in substance, that the petitioner absented himself from duty without notice for a period of three days in violation of an explicit rule of the department which was reasonable in itself. Such a charge cannot be regarded as trivial. Failure to enforce it would inevitably result in disorganization of the department with consequent serious results to the inhabitants of the city of Niagara Falls dependent upon the department for their water supply. The petitioner asserts that in view of his illness as shown by the testimony taken before the respondent at the hearing his breach of the rule cannot be regarded as a serious one. This brings us to a consideration of the nature of the proceedings. Under the Civil Service Law, the petitioner was not entitled to a trial of the charges preferred against him. He was entitled to have the charges reduced to writing, to an opportunity to answer them and to give any explanation thereof which he might be able. His rights in these respects were fully granted and the action of the respondent in disposing of the charges upon the facts is not subject to review. So long as the charges were sufficient in themselves, so long as they were reduced to writing and the defendant afforded an opportunity to answer and explain them, the city manager had the power under the decisions, without the taking of any evidence, to impose such punishment as he might deem suited to the offense and within his general powers as city manager. (*People ex rel. Kennedy* v. *Brady*, 166 N. Y. 44; *People ex rel. Keech* v. *Thompson*, 95 id. 451.)

The authorities cited by the petitioner do not sustain his contention.

In *People .ex rel. Winspear* v. *Kreinheder* (197 App. Div. 887) the petitioner was a member of the police force and as such entitled to a trial of the charges preferred against him which might be reviewed upon certiorari. The court held that on the evidence the charges were not sustained with the possible exception of one manifestly of a trivial character.

*People ex rel. Rigby* v. *Anderson* (198 App. Div. 283) was also a case where the petitioner was entitled to a trial since he was a veteran, and, therefore, in that case also the determination of the officer who heard the charges was subject to review. The offense consisted of temporarily holding a small sum of money paid in cash instead of turning it over immediately to the cashier in the office, thereby interrupting other work upon which petitioner was engaged. There was no claim of intention to misappropriate the money. He violated no written rule, but an unwritten " policy " of the office in so doing. Under such circumstances it is at least doubtful whether there was any actual dereliction of duty. If there was, it was properly characterized as so trivial as not to warrant discharge.

In *Matter of Crowley* v. *Fowler* (217 App. Div. 16) the court held that the dismissing officer's failure to comply with the statute by giving an opportunity to answer or explain written charges was fatal to the respondent's case and that the dismissal from office could not, therefore, be sustained.

*People ex rel. Hunt* v. *Hall* (220 App. Div. 152) was also a case of certiorari where the petitioner had the right to a trial. The court states explicitly that of the charges, five were withdrawn or dismissed by consent and the remainder were not established by the evidence.

In *Matter of Kenison* v. *White* (220 App. Div. 347) the petitioner sought reinstatement as chief of police of the village of Scarsdale, contending that he could not be summarily removed. The village contended that the appointment was for one year and had expired. No charges were preferred against him. The sole question was whether the appointment was for a definite term or of indefinite duration. The court held under the Civil Service Law it was the latter and accordingly ordered reinstatement.

Objection was raised at the hearing before the respondent to his presiding over it on the ground of prejudice against the petitioner on his part. It is sufficient to say that the record does not disclose any facts which substantiate the charge.

As the petitioner does not belong to any of the classes of employees under the Civil Service Law who are entitled to a trial of charges brought against them, the city manager was entitled to consider

any pertinent facts within his knowledge, whether included in the evidence produced before him on the hearing or not, in determining both the question of guilt and the nature of the punishment to be imposed. Under these circumstances it is impossible for the court to say whether in view of the facts which may have been known to the city manager the penalty of dismissal was inappropriate, for the city manager could and should consider matters outside of the record in fixing that penalty, including the petitioner's previous record in the department, his habits and capacity, and the effect of the punishment upon his fellow-employees as an example. The court is not in the position, if it had the power, to review the action of the city manager in regard to these matters and, therefore, cannot say that the punishment was not justified by the offense. The situation differs widely from that which is presented upon certiorari to review a determination of an officer or board after the trial of charges where the charges must be proved upon the record and the punishment based upon the charges as proved.

In my opinion the petitioner has failed to show that he is entitled to the order prayed for which should accordingly be denied, with costs.