Hugh S. C-oyle, J.
In this proceeding, brought pursuant to article 78 of the Civil Practice Act, the petitioner seeks to review and annul a determination, dated June 6,1960 made by respondent Civil Service Commission, wherein it revoked the 1952 certification and appointment of petitioner as a patrolman. The determination made by respondent was based upon findings of fraud of a substantial nature in petitioner’s application for appointment to the position of patrolman and was made pursuant to the provisions of subdivision 4 of section 50 of the Civil Service Law. The petition claims that there was no evidence that petitioner committed any fraud in connection with his 1952 application.
Petitioner originally argued that this matter should not be referred to the Appellate Division pursuant to section 1296 of the Civil Practice Act. Subsequently, by letter, his attorneys in effect have requested such transfer on the ground that a simultaneous article 78 proceeding by the same petitioner (to review a minor disciplinary determination made after a statutory hearing, on unrelated charges before the respondent, Public Safety Commission herein) has been so transferred with the consent of all parties.
"While this proceeding does not fit precisely any of the subdivisions 1 to 5-a of section 1296 of the Civil Practice Act, it most certainly does not fall within the confines of subdivisions 6 and 7 thereof, since the ‘ ‘ hearing ’ ’ afforded petitioner by the Civil Service Commission was not, ‘ ‘ pursuant to statutory direction.” Neither the commission’s rules nor subdivision 4 of section 50 of the Civil Service Law, pursuant to which the “ fraud ” charges were considered by the respondent commission, indicate that a hearing is directed or required thereby. Said subdivision 4 of section 50 merely provided that petitioner be afforded “ an opportunity to make an explanation and to submit facts in opposition ” to a written statement of the reasons for “disqualification.” In Matter of Hagan v. Picard (171 Misc. 475, 476, affd. 258 App. Div. 771), it was held: “ Moreover, a mere voluntary hearing conducted without statutory direction does not require the transfer of the proceeding to the Appellate Division, even though it be complained that the result is without evidence or against the weight of evidence.” (See, also, Matter of Brenner v. Bruchman, 253 App. Div. 607; Matter of Kiorts v. Adams, 141 N. Y. S. 2d 77.)
Subdivision 4 of section 50 is derived, in part, from repealed subdivision 4 of former section 14, and subdivision 2 of section 22 of the Civil Service Law, which contained language therein similar to new subdivision 4 of section 50 with respect to dis *752 missals made after “ explanation Proceedings to review determinations made after nondirected hearings, pursuant to said former sections 14 and 22, have usually been retained and decided by Special Term Justices (e.g., Matter of Marinick v. Valentine, 263 App. Div. 564, affd. 289 N. Y. 780; Matter of Nathanson v. Adams, 207 Misc. 572; Matter of Brown v. Moses, 191 Misc. 360; Matter of Singer v. Graves, 254 App. Div. 37). A comparison of the language used in section 75 of the Civil Service Law as to hearings required in disciplinary proceedings shows conclusively that subdivision 4 of section 50 does not direct a statutory hearing. Therefore, transfer to the Appellate Division must be denied.
The petitioner has also requested a jury trial, but it is held that since the petitioner merely questions whether there was sufficient evidence presented to warrant the commission’s finding of substantial frauds committed in the original appointment of petitioner, such question may be determined by the court on the record here (Matter of Pichacz v. O’Connell, 272 App. Div. 755; Matter of France v. O’Connell, 204 Misc. 681, affd. 282 App. Div. 1011; Matter of Snetlage v. O’Connell, 271 App. Div. 1015). The record contains sufficient undisputed facts upon which the commission, and this court, could and can, determine whether the petitioner was properly, and in the exercise of reasonable discretion, dismissed from the police force, without the necessity of any retrial. (See Matter of Singer v. Graves, 254 App. Div. 37, and cases cited therein.) It is the Civil Service Commission alone which is charged under the law with the right and duty of making an investigation and finding as to an appointee’s fraud in securing eligibility and certification, subject always to court review as to reasonableness and sufficiency of the evidence before the commission. The court should not disturb the exercise of such administrative function and discretion, ‘1 unless the action complained of be deemed arbitrary or capricious.” (Matter of France v. O’Connell, supra; Matter of Norton v. O’Connell, 282 App. Div. 744; Jocher v. Brennan, 123 N. Y. S. 2d 779.)
Turning to the facts and record presented for review, it appears by undisputed proofs that the petitioner’s 1952 civil service application intentionally failed to disclose, and that he personally failed to disclose an arrest in New Jersey and at least several serious United States Navy arrests, court-martial convictions and imprisonments. His application answered “ No ” to questions designed to elicit information as to any arrests or convictions for other than minor traffic violations. It is *753 admitted by petitioner that he never disclosed arrests and he has admitted he specifically mentioned only one AWOL conviction in his talk with the commission chairman in 1952.
It should be noted that the petitioner’s “absences without leave ’’were violations of the United States Code (former tit. 34, § 1200, art. 19, now tit. 10, § 886), which permitted “ such punishment as a court-martial may adjudge ” to be inflicted upon any Navy person who “ is absent from his station or duty without leave, or after his leave has expired.” This petitioner admittedly was convicted at least twice for absences without leave, once 10 days, and once 18 days, and served six months ’ imprisonment on each separate conviction. He also admitted to three or four other Navy court-martial convictions, but has persisted in his refusal to give necessary consent for disclosure of his complete Navy record. The record shows conclusively that, although he disclosed to the Civil Service Commission his ‘ ‘ Bad Conduct” discharge, and falsely attributed such discharge to one AWOL court-martial, he deliberately concealed his other serious Navy arrests and convictions, and the Atlantic City arrest, all tending to show disrespect for authority and law in failing to properly and fully answer the application questions relating to “arrests” and “convictions”. The commission was entitled to know all details of all arrests and convictions to form its own conclusion therefrom as to petitioner’s character and fitness to be a police officer. It was justified in concluding that frauds of a serious and substantial nature had been perpetrated by petitioner in 1952 by his said concealment.
Tn Matter of Mondesir v. Schechter (27 Misc 2d 429, 430), Mr. Justice Spectob wrote, in a case involving disqualification of an applicant for the police force because of 14 traffic summonses, 6 of which were not answered: 1‘ Although the violations, except one, may seem insignificant, the additional failure to appear to answer a mandate of the court compounds the original violations and shows an utter disrespect and disregard for authority. * * * Due to the vital function of the Police Department, the character of a candidate must be more exacting than for that of the ordinary civil service position. Upon the record here presented it cannot be said that the determination was arbitrary, unreasonable or illegal. There is ample warrant and basis in the. record for the determination made. Accordingly, the application is denied and the petition dismissed.”
In the Matter of Nathamon v. Adams (207 Misc. 572, 576) the court aptly said: ‘ ‘ The court should not lightly enter the domain in which an officer exercises administrative discretion *754 lodged in Rim by law (see Matter of Larkin Co. v. Schwab, 242 N. Y. 330), especially in so sensitive a branch of the public service as the city’s police department.”
And the dissenting opinion in Appellate Division, Second Department, in Matter of Pitt v. Town Bd. of Town of Ramapo (10 A D 2d 958, 959) said: “ In considering the Town Board’s determination, it must be borne in mind that the petitioner is a policeman and as such must be honest and fully reliable. ‘A police officer is guilty of serious fault when he does an act even without evil intent which tends to destroy confidence in his integrity and honesty ’ (Matter of Roge v. Valentine, 280 N. Y. 268, 280). The petitioner was guilty either of dishonesty or gross carelessness. The Town Board has the responsibility of maintaining a good, efficient police force; and in this case, its determination cannot be found to have been arbitrary, capricious or unreasonable. Hence, its action should be sustained (People ex rel. Masterson v. French, 110 N. Y. 494; People ex rel. Brown v. Greene, 106 App. Div. 230, affd. 184 N. Y. 565).”
In the Matter of Eberhart v. Robbins (25 N. Y. S. 2d 336), the petitioner had been dismissed for giving a false “NO” answer to a question requesting disclosure of “ arrests ”, similar to question 9, on the application here involved. The court said, in part (p. 339):
‘1 However, the petitioner’s prior conviction is only indirectly the cause of his dismissal. The direct and immediate cause is his intentional false statement upon said application. * * *
‘ ‘ The respondent City Manager dismissed the petitioner following a hearing held pursuant to § 137 of the Charter of said City. Such action was within the scope of his powers. O ’Malley v. Bobbins, 142 Misc. 305, 255 N. Y. S. 161. His decision cannot be disturbed if supported by a preponderance of the evidence (Matter of Weber v. Town of Cheektowaga, 284 N. Y. 377, 31 N. E. 2d 495) which it unquestionably is. The rule stated in Matter of Nalore v. Baker, 244 App. Div. 554, 558, 279 N. Y. S. 944, is applicable although in that decision an opposite result was reached on readily distinguishable facts.”
And even if the petitioner had answered falsely solely through ignorance, although the court is convinced from the record his concealments were intentional and deliberate, he must nevertheless be held accountable therefor and subject to the commission’s discretionary determination. (See Matter of Perotta v. Gregory, 4 Misc 2d 769.)
Petitioner’s belated request, in his reply affidavit, that the Chairman of the Civil Service Commission be disqualified, must be decided adversely to petitioner. Said chairman was not a *755 “ judge ”, but was the person actually defrauded by petitioner, who had withheld important information as to arrests, convictions and his Navy record of repeated bad conduct. The hearing was not a judicial one, nor was it held pursuant to statutory direction, but was merely an act of grace. The chairman could act upon any matters elicited from or adduced by the petitioner in his “ explanation ” allowed under subdivision 4 of section 50 of the Civil Service Law as well as upon relevant matters within the chairman’s personal knowledge. Further, no objection or challenge to his qualification was made prior to or during the hearing, nor thereafter, until the submission of such new theory in the reply affidavit. It has been held that a police commissioner may sit on a trial of charges against a policeman, even after he has been duly and timely challenged as “ prejudiced ”, or even after he has been served with a subpoena to be a witness in a statutory trial (Matter of Sincerbeaux v. Hanlon, 282 App. Div. 960, motion for leave to appeal denied 283 App. Div. 670, 306 N. Y. 986; People ex rel. Doherty v. Board of Police Comrs., 84 Hun 64, affd. 148 N. Y. 757; People ex rel. Liberty v. Cooke, 188 App. Div. 351, affd. 229 N. Y. 613). Here the chairman sat not as a judge, but as one of three Commissioners, without objection or challenge and openly stated on the record his personal knowledge of the uncontradicted facts in issue. (People ex rel. Campbell v. Partridge, 99 App. Div. 410, affd. 180 N. Y. 542.)
The petitioner’s contentions that he is being “persecuted” because of his alleged gambling revelations long after his 1952 fraud, are rejected as being unfounded, and raised solely to becloud the issue, namely, did petitioner commit substantial fraud in obtaining his original civil service certification in 1952 ! The court may judicially note that the Westchester County Grand Jury has conducted an intensive, full-scale investigation of petitioner’s said claims and has publicly rejected them.
After a careful review of all the testimony and exhibits the court finds that there is ample evidence on undisputed facts to justify the commission’s revocation of petitioner’s 1952 certification of eligibility, and to mandate his dismissal from the police force for fraud of a substantial nature practiced upon the respondent commission. The petitioner’s admitted failure to fully disclose all of his Navy arrests and convictions of United States Code offenses, are each sufficient to support the commission’s determination. Moreover, petitioner’s evasive and incredible “ explanations ” regarding his belatedly admitted record of arrests and convictions, and in admittedly failing to disclose his entire Navy record on his application, and when directly and personally questioned in 1952 by the chairman on *756 this subject, constitute ample grounds for the Civil Service Commission’s findings and revocation determination and the mandatory dismissal by respondent Public Safety Commissioner. The petition herein is dismissed.